UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| HAIER US APPLIANCE SOLUTIONS, INC. d/b/a GE APPLIANCES, as successor-in-interest to the Appliances business unit of GENERAL ELECTRIC COMPANY <br><br> PLAINTIFF <br><br> v. <br><br> APPLIANCE RECYCLING CENTERS OF AMERICA, INC. <br><br> DEFENDANT | Case No. 3:17-cv-00242-TBR |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO STAY LITIGATION

The Motion to Stay Litigation (DN 8) filed by Defendant Appliance Recycling Centers of America, Inc. ("ARCA") must be denied not only because its legal reasoning is fundamentally flawed, but also because its factual underpinnings are incorrect. Clear and binding Sixth Circuit authority provides that where claims between parties under separate agreements where only one agreement contains an arbitration provision must be split between litigation and arbitration to conform to the parties' expressed intent. *See Nestle Waters North America, Inc. v. Bollman*, 505 F. 3d 498, 505 (6th Cir. 2007). The matter *sub judice* relates solely to ARCA's breach of the March 9, 2016 Forbearance Agreement ("Forbearance Agreement") with Plaintiff Haier US Appliance Solutions, Inc. d/b/a GE Appliances ("GEA"). The Forbearance Agreement is separate and distinct from the agreements which are the subject of the arbitration between the parties.[1] And contrary to ARCA's representations, GEA is seeking totally distinct damages – with no overlap – in this litigation and the

---

[1] Appliance Sales & Recycling Agreement dated October 21, 2009 between ARCA and GEA (the "2009 Agreement") and the Appliance Recycling Agreement dated June 9, 2016 between ARCA and GEA (the "2016 Agreement") (collectively, the 2009 and 2016 Agreements). Arbitration between the parties related to the 2009 and 2016 Agreements, but separate from the Forbearance Agreement and disputes thereunder, is presently pending in Chicago, Illinois.

arbitration. Moreover, the Forbearance Agreement contains an express and unequivocal consent to jurisdiction in this Court. *See* DN 7-4 (Exhibit 2, § 6.07). ARCA must not be allowed to delay GEA's enforcement of the Forbearance Agreement, via its unfounded request for a stay of litigation.

## FACTUAL BACKGROUND

ARCA is a recycling company registered to do (and doing) business in the state of Kentucky as a foreign corporation. *See* **Exhibit 1**, Affidavit of Christi Wantuck, ¶ 5. ARCA and GEA had an agreement from 2009 through 2016, memorialized in the 2009 Agreement and 2016 Agreement, for the performance of recycling services by ARCA. *See* Exhibit 1, ¶ 4. By late 2015, ARCA was in default to GEA. *See* Exhibit 1, ¶ 6. To allow ARCA additional time to cure the default, while also continuing to do business with ARCA, GEA entered into a stand-alone Forbearance Agreement with ARCA, on March 9, 2016. *See* Exhibit 1, ¶ 6 and Exhibit A thereto. The Forbearance Agreement allowed ARCA pay the balance due over 16 months, provided for the possibility of a waiver of the interest on ARCA's payments as long as payment was timely, and provided certain other terms, such as the aforementioned venue provision. *See* Exhibit 1, ¶ 6 and Exhibit A thereto.

ARCA voluntarily entered into the Forbearance Agreement, acknowledged the balance owed, and made the first seven payments due under the Forbearance Agreement. *See* Exhibit 1, ¶ 7. In October 2016, ARCA defaulted on the terms of the Forbearance Agreement. *See* Exhibit 1, ¶ 8. The balance due pursuant to the terms of the Forbearance Agreement is wholly separate from any balance due under the terms of the separate 2009 Agreement and 2016 Agreement. *See* Exhibit 1, ¶¶ 9-10. As of June 20, 2017, a principal balance of $535,791.04 was due under the Forbearance Agreement, plus GEA's costs and expenses of collection. No part of the damages sought by GEA in this action are included in the damages included in any other action, including the arbitration presently pending between the parties related to the 2009 and 2016 Agreement. *See* Exhibit 1, ¶¶ 9-10.

## ARGUMENT

ARCA attempts to persuade the Court that: (1) the arbitration provisions in the 2009 and 2016 Agreements somehow bind the parties to arbitrate ARCA's default under the separate Forbearance Agreement; (2) that the Forbearance Agreement is unenforceable due to fraud and/or bad faith, therefore the venue provision therein is non-binding; or (3) that the 2009 and 2016 Agreements are so related to the Forbearance Agreement that it would be prejudicial to ARCA to proceed with the instant action. If all else fails, ARCA calls upon the Court's discretion to stay GEA's claims, even if found non-arbitrable. However, none of these arguments are persuasive, as explained below, and ARCA's Motion to Stay must be denied.

**1. The arbitration clause of the 2009 and 2016 Sales Agreements do not mandate arbitration of issues arising under the Forbearance Agreement.**

GEA does not contest ARCA's position that arbitration is the proper forum for the disputes that are currently pending there related to the 2009 and 2016 Sales Agreements. In fact, GEA has complied in full with the arbitration clauses and pursued its claims under those agreements in arbitration. Nor does GEA quibble with ARCA's statement that arbitration is a favored process for resolving disputes. But because arbitration is a matter of contract only, and Courts cannot require the arbitration of disputes where the parties have not so agreed, this particular dispute is not subject to arbitration and must remain in this Court.

The Sixth Circuit has recognized the traditional rule that "a plaintiff is master of his claim." *See Nestle*, 505 F. 3d at 505. The Court in *Nestle* stated that "if an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement…" *Id.* at 505. The *Nestle* Court further recognized that "[i]n the context of multiple contracts, this court has adopted a more narrow test of arbitrability, examining which agreement 'determines the scope of' the contested obligations…" and "…rejected the view that a

3

dispute is arbitrable merely because it 'touch[es] matters covered by' the arbitration clause." *Id.* at 504.

As with any contract, the intent of the parties must also be considered in determining whether a dispute is arbitrable. *See Granite Rock Co. v. International Broth. Of Teamsters,* 561 U.S. 287 (2010). "Arbitration is strictly a 'matter of consent,' and thus 'is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *Id.* at 299, *citing Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). To determine the intent of the parties, a Court must first look to the contents of the contract in question, an admonition the Sixth Circuit followed: "If [Defendant] had intended to subject this dispute to the arbitration provision, it could have easily, clearly, and unequivocally done so." *Alticor, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 411 F.3d 669 (6th Cir. 2005). "In determining the arbitrability of a dispute, courts do not 'reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* at 673, citing *EEOC v. Waffle House, Inc.,* 534 U.S. 279 (2002); *see also Dental Associates, P.C. v. American Dental Partners of Michigan, LLC and American Dental Partners Inc.,* 520 Fed. Appx. 349 (6th Cir. 2013). Finally, the Sixth Circuit, quoting the Supreme Court, has cautioned against 'forc[ing] unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *Fazio v. Lehman Bros., Inc.* 340 F.3d 386 (6th Cir. 2003), *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).

The parties here entered into the Forbearance Agreement for the limited purpose of resolving the balance subject to it, which is the exact same limited purpose of this litigation – recovery of that balance. ARCA could have insisted upon the inclusion of an arbitration clause in the Forbearance Agreement, but ARCA did not and the parties did not make that choice. Instead, the parties included a venue provision providing for court resolution of the limited issues specific to the Forbearance Agreement.

4

As clearly pleaded in the Complaint (DN 1), GEA's claim before this Court pertains only to the Forbearance Agreement and ARCA's breach thereof, and does not relate to the 2009 Agreement. GEA has reiterated that position here. *See* Exhibit 1. Although GEA references the 2009 Agreement by way of explanation in its pleading, GEA's claims for damages for ARCA's breach of the Forbearance Agreement can be liquidated without enforcement of the 2009 Agreement. Said another way, the Forbearance Agreement is a stand-alone contract that covers "old charges," not the ongoing business between the parties, which is covered by the 2009 and 2016 Agreements. ARCA is simply mistaken in its assertions that there is any overlap between the damages sought in this action for breach of the Forbearance Agreement, and via the Counter-Claim asserted in the arbitration. The contracts are entirely separate, as are the resulting damages sought by GEA. Thus, this Court must proceed with the litigation to resolve the issue of ARCA's breach of the Forbearance Agreement.

**2. ARCA has not and will not be able to show that the Forbearance Agreement is unenforceable due to fraud, bad faith, or otherwise.**

Simply put, ARCA has alleged that the Forbearance Agreement is unenforceable because ARCA allegedly relied on oral promises made by GEA and later withdrawn, in providing the services that led to the balance that is the subject of the Forbearance Agreement, and in executing the Forbearance Agreement. However, even if ARCA does produce evidence of facts to support these assertions, no such reliance could be reasonable based on the plain language of the Forbearance Agreement, and ARCA will not be able to succeed in its argument that the Forbearance Agreement was procured by fraud or bad faith.

Under Kentucky law, to establish a claim for fraud, ARCA would have to prove that GEA made " '(1) a material misrepresentation; (2) which is false; (3) which was known to be false, or made recklessly; (4) made with inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) causes injury.'" *Helton v. American General Life Ins. Co.*, 2010 WL 2889666 (W.D. Ky. 2010),

5

*citing Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993). Additionally, the reliance must be reasonable. *See id.* With regard to reasonable reliance, "'a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing.'" *Id.* at 2.

GEA's Forbearance Agreement with ARCA was made in good faith, supported by adequate consideration, and without any misrepresentation. ARCA claims that it entered into the Forbearance Agreement based on GEA "promising to continue to pay ARCA to recycle when the scrap price went below $275." Motion to Stay at 4. However, the Forbearance Agreement itself provides that "[t]his Agreement together with the Appliance Sales & Recycling Agreement constitute the entire Agreement by and between ARCA and GE with respect to the subject matter of this Agreement and supersedes all prior Agreements, understandings, and negotiations, both written and oral, by and between ARCA and GE with respect to the subject matter of this Agreement. No representation, warranty, inducement, promise, understanding, or condition which is not set forth in this Agreement has been made or relied upon by ARCA or GE." Forbearance Agreement, §6.03. There is no provision in the Forbearance Agreement for a future amendment of the 2009 Agreement based on the price of scrap metal.

As such, ARCA cannot have reasonably relied on an oral representation of a future amendment to the recycling agreement to enter into the Forbearance Agreement. Therefore, even if ARCA could prove any other element of fraud under Kentucky law, ARCA's argument that the Forbearance Agreement is unenforceable fails as a matter of law because it cannot prove that it reasonably relied on any oral representation by GEA. Finally, should ARCA wish to press its contention regarding fraud, it is free to do so in this Court.

**3. The Forbearance Agreement is a separate, stand-alone, contract that may be enforced separately from the 2009 and 2016 Agreements, without prejudice or risk of inconsistent rulings.**

The Forbearance Agreement between the parties is enforceable on its own, without reference to the 2009 Agreement. A forbearance agreement, supported by consideration, that delays enforcement of an obligation in exchange for a release of certain claims, is a valid contract. *See In re Merv Properties, LLC*, 539 B.R. 516 (Bankr. E.D. Ky. 2015). ARCA's arguments related to the price of scrap, and amendments to the recycling agreements between the parties are irrelevant to the matter at hand – ARCA's default under the Forbearance Agreement. Once executed, ARCA's obligation to GEA for the balance due thereunder was governed by the Forbearance Agreement. There will be no prejudice to the parties by proceeding in this forum as to the Forbearance Agreement default, with any contract disputes as to the recycling agreements being resolved in the pending arbitration. Since there are separate contracts and entirely separate damages involved, there can be no risk of inconsistent rulings. And ARCA is free to press it arguments and defenses, if any, related to the Forbearance Agreement in this action. Had ARCA believed that arbitration of the instant dispute was a right it needed, it could have attempted to bargain for it. Instead, the parties provided for venue in this Court, and this Court therefore should proceed with the matter.[2]

## **CONCLUSION**

For the reasons stated above, ARCA has not stated any sufficient legal or factual basis for its requested stay pending completion of arbitration, not should this action be consolidated with the existing arbitration of the 2009 and 2016 Agreements, and ARCA's Motion to Stay must be denied.

---

[2] In fact, part of the consideration to GEA in the Forbearance Agreement was the ability to proceed to Court on its collection claims thereunder, given that it will not need to take the extra step of reducing an arbitration award to a Judgment, and the panoply of collection options available to GEA from this Court.

Respectfully submitted,

FULTZ MADDOX DICKENS PLC
Phillip A. Martin
Elizabeth B. Alphin

 /s/ Elizabeth B. Alphin
101 S. Fifth Street, 27th Floor
Louisville, Kentucky  40202-3116
(502) 588-2000
Fax: (502) 588-2020
pmartin@fmdlegal.com
ealphin@fmdlegal.com

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

On June 21, 2017, I electronically filed this document through the ECF System, which will send a notice of electronic filing to:

Christopher E. Schaefer
STOLL KEENON OGDEN PLLC
2000 PNC Plaza
500 West Jefferson Street
Louisville, Kentucky  40202

Mark J. Briol
William J. Carpenter
BRIOL & BENSON, PLLC
3700 IDS Center
80 South Eighth Street
Minneapolis, MN  55402

 /s/ Elizabeth B. Alphin
*Counsel for Plaintiff*

8