UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-CV-242-TBR

HAIER U.S. APPLIANCE SOLUTIONS, INC.     PLAINTIFF
d/b/a GE APPLIANCES, successor-in-interest to
the appliance businesses unit of the
GENERAL ELECTRIC COMPANY,

v.

APPLIANCE RECYCLING CENTERS OF     DEFENDANT
AMERICA, INC.,

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions filed by Defendant Appliance Recycling Centers of America, Inc. ("ARCA"). The first is a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), [R. 7], and the second is a Motion to Stay Litigation Pursuant to 9 U.S.C. § 3, [R. 8]. Plaintiff Haier U.S. Appliance Solutions, Inc. d/b/a GE Appliances ("GEA") responded to both motions. [R. 14; R. 15.] ARCA replied. [R. 16; R. 17.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, ARCA's Motion to Dismiss, [R. 7], is **DENIED WITH LEAVE TO REFILE** and ARCA's Motion to Stay Litigation, [R. 8], is **GRANTED**.

## BACKGROUND

The first portion of the factual allegations are as set out in the Complaint. [R. 1 at 2.] On or about March 9, 2016, GEA and ARCA entered into a Forbearance and Repayment Agreement ("Forbearance Agreement"). [*Id*; R. 8-4 at 8 (Forbearance Agreement).] In this agreement, GEA recalls, ARCA acknowledged that, under the preceding 2009 Appliance Sales and Recycling Agreement ("2009 Agreement"), ARCA still owed GEA a principal balance of $621,851.85, but

1

GEA agreed to forbear from collecting that balance on certain terms and conditions. [R. 1 at 2.] GEA alleges that despite its performance of all obligations required of it under the Forbearance Agreement, ARCA failed to make payments and owes a balance, as of April 12, 2017, of $528,167.66, exclusive of attorneys' fees and costs. [*Id*. at 3.] GEA claims that despite repeated demands and communications with ARCA concerning the balance, ARCA has failed to pay the money owed as required by the Forbearance Agreement. [*Id*.]

ARCA recounts this story in a drastically different fashion.[1] Mainly, ARCA claims that GEA fraudulently induced it into signing the Forbearance Agreement through promises GEA failed to keep. [R. 8-1 at 4 (Memorandum in Support of Motion to Stay.] ARCA recalls that in October of 2015, ARCA could not afford to accept materials from GEA during the holiday rush because of the low scrap price. [R. 8-2 at 2 (Tony Isaac Affidavit).] In order to help, GEA allegedly promised to pay ARCA's transportation costs by subsidizing ARCA's recycling activity. [*Id*.] ARCA claims GEA did this by agreeing to pay a per unit price to ARCA when the price of scrap fell below $275.00 per ton. [*Id*.] After ARCA accumulated $300,000 to $400,000 in transportation costs over the holiday season, ARCA alleges that GEA broke this promise and demanded payment of the transportation costs from November to December of 2015. [*Id*.] Thereafter, on March 9, 2016, the two parties entered the Forbearance Agreement which set out a payment plan in which ARCA could repay GEA these transportation costs. [R. 1 at 2.]

ARCA claims that the only reason it entered the Forbearance Agreement was because GEA promised in the Sixth Addendum to the 2009 Agreement to continue to pay ARCA when the scrap price dropped below $275.00.[2] [R. 8-2 at 2, ¶ 5.] However, in May 2016, ARCA

---

[1] As explained in the Standard Section, in granting a stay under 9 U.S.C. § 3, the Court approaches factual questions as it would at the summary judgment stage.

[2] The Sixth Addendum to the 2009 Agreement contains a pay schedule table that labels "GE" as the "Responsible Party" for payment until the scrap price reaches $275.00. [R. 7-5 at 3-4, Table 2.1.]

alleges that GEA informed it that it would no longer subsidize ARCA's cost of recycling, and the parties immortalized this decision in the 2016 Appliance Sales and Recycling Agreement. [*Id*. at 2-3, ¶ 7.] In that agreement, ARCA did not pay for product and GEA did not pay for recycling. [*Id*.; R. 7-6 at 5, ¶ 2.1(e) (2016 Agreement).] However, ARCA was still responsible for the transportation costs. [R. 8-2 at 3, ¶ 9; R. 8-6 at 4, ¶ 2.1(a).]

ARCA alleges that on October 4, 2016, it gave notice to GEA that it was temporarily suspending service, but then gave notice the next day that it would resume service. [R. 8-2 at 3-4, ¶ 11.] ARCA claims that GEA then refused to supply product to ARCA, so ARCA demanded arbitration on November 15, 2016 on the grounds that GEA was in breach of their 2016 Agreement. [*Id*.] On April 18th, 2017, GEA simultaneously filed an Answer and Counterclaim in arbitration for a balance owed under the 2016 Agreement, [R. 8-10 at 6-9], and the Complaint for breach of contract of the Forbearance Agreement, which is the subject of this lawsuit, [R. 1]. On May 26, 2017, ARCA filed an Amended Notice of Defense to Counterclaim in arbitration, in which ARCA alleges that GEA promised not to charge transportation costs in November 2015 and fraudulently induced ARCA to endorse the Forbearance Agreement through promising in the Sixth Addendum to pay for product when the scrap price dropped. [R. 8-11 at 6-7 (Arbitration Amended Notice of Defense to Counterclaim).]

In response to GEA's Complaint for Breach of Contract, ARCA filed both a Motion to Dismiss, [R. 7], and a Motion to Stay Ligation, [R. 8].

## STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, "embodies [a] national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *Seawright v.*

3

*Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Under the Act, a written agreement to arbitrate disputes arising out of a contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There are "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Before granting a stay under 9 U.S.C. § 3, the Court "must engage in a limited review to determine whether the dispute is arbitrable," meaning "[1] that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of the agreement." *Richmond Health Facilities*, 811 F.3d at 195 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); *see also Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). In performing its task, the Court approaches factual questions as it would at the summary judgment stage. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1062 (E.D. Ky. 2015). This means the Court may consider materials cited in the record, such as documents and affidavits. Fed. Civ. R. Proc. 56(c)(1)(a). If the Court is satisfied that the parties formed a valid agreement to arbitrate, it must stay litigation involving such a dispute until the parties resolve it in the contracted-for manner. *See* 9 U.S.C. § 3. If there are disputed questions of fact concerning the formation of such an agreement, then the Court should hold an evidentiary hearing to resolve the question. *See Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 425 (S.D.N.Y. 1978); *Marshall v. Green Giant Co.*, No. 4-83-578, 1985 WL 2458, at *2–3 (D. Minn. Aug. 7, 1985); *cf. Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 340 (5th Cir. 1984) (holding no

evidentiary hearing to be necessary in the absence of "disputed factual questions going to the legal issue of arbitrability").

## DISCUSSION

ARCA offers many arguments in support of its Motion to Stay. First, ARCA states that the issue of whether GEA offered the Sixth Addendum in order to fraudulently induce ARCA to sign off on the Forbearance Agreement is referable to arbitration under the 2009 Agreement. [R. 8-1 at 10-11.] Secondly, ARCA claims that it defaulted on the balance due under the Forbearance Agreement due to GEA's breach of the 2016 Agreement. [R. 8-1 at 12.] Therefore, ARCA reasons that this Court should not decide the current claim concerning the Forbearance Agreement until the arbitrator has decided whether GEA breached the 2016 Agreement. [*Id*.] Third, ARCA argues that both this Court and the arbitrator would be required to decide the validity of the Forbearance Agreement in parallel, causing a duplication of effort and possibly inconsistent rulings. [*Id*. at 13-14.]

ARCA also moves to dismiss this action due to lack of personal jurisdiction. However, ARCA argues that the determination of personal jurisdiction should be stayed until the completion of the pending arbitration. [R. 7-1 at 1 (Memorandum in Support of Motion to Dismiss).]

### I.     Motion to Stay

Pursuant to 9 U.S.C. § 3, ARCA now moves to stay this litigation pending arbitration. Neither party disagrees that a valid agreement to arbitrate exists within the 2009 and 2016 Appliance Recycling Agreements, thereby satisfying the first factor of the Court's consideration in determining whether to grant a stay under 9 U.S.C. § 3. [*See* R. 8-1 at 10; R. 14 at 3 (Response to Motion to Stay).] The principal issue here is the second factor: whether "the specific dispute

falls within the substantive scope of the agreement." *Richmond Health Facilities*, 811 F.3d at 195.

After examining the arguments regarding the issue at hand and the exhibits from the matter currently in arbitration between the parties, the Court will not rule on the current action before the resolution of the arbitration proceedings. First, ARCA asserts the defense that GEA fraudulently induced ARCA to agree to the Forbearance Agreement both in this matter and in its arbitration proceedings. [R. 8-1 at 10; R. 8-11 at 6, ¶ 20.] Indeed, if the Court ruled on this action, it would be considering the enforceability and validity of the Forbearance Agreement in parallel with the arbitrator. Even if this issue under the Forbearance Agreement were found to be nonarbitrable, the Court would still have discretion to stay the proceedings in the interest of judicial economy. *See Crumpton v. Hurstbourne Healthcare, LLC*, No. 3:16-CV-478-DJH, 2017 WL 1091790, at *3 (W.D. Ky. March 22, 2017) (holding to stay all remaining claims in the interest of judicial economy); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (the decision of staying litigation among non-arbitrating parties is left to the district court "as a matter of discretion to control its docket.") It is not in the Court's best interest in terms of efficiency or adherence to federal policy to rule on an action that involves the follies of a business relationship that is currently in the process of arbitration.

Secondly, even if the Court engaged in the analysis under 9 U.S.C. § 3, the result would remain the same. In order to determine whether a dispute falls within the scope of the arbitration clause of an agreement, the Sixth Circuit directs courts to "ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003). The Court finds that this action, regarding payment of funds that originally stem from the

business relationship established in the 2009 Agreement, cannot be maintained without referencing the 2009 Agreement, which, along with the 2016 Agreement, contains an arbitration clause. Thus, the action will be stayed pending arbitration.

**II.    Motion to Dismiss**

ARCA moves to dismiss the action brought by GEA for lack of personal jurisdiction. [R. 7.] Mainly, ARCA argues that Section 6.07 of the Forbearance Agreement is the sole basis on which this Court may exercise personal jurisdiction over it, yet the validity of that same agreement is currently at issue in the arbitration proceedings. [R. 7-1 at 2.] Therefore, ARCA asks the Court to delay its ruling on its motion until the validity of the Forbearance Agreement has been determined in arbitration. If this Court considers the validity of the Forbearance Agreement, it risks an inconsistent ruling with the arbitrator. Therefore, the Court will not decide the issue of personal jurisdiction at this time. The Court will deny ARCA's Motion to Dismiss with leave to refile after the conclusion of arbitration. The parties shall notify the Court by filing a status report in the record and also by emailing the Court at **Kelly_P_Harris@kywd.uscourts.gov** when the arbitration proceeding is complete.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: ARCA's Motion to Dismiss, [R. 7], is **DENIED WITH LEAVE TO REFILE** and ARCA's Motion to Stay Litigation, [R. 8], is **GRANTED**.

**IT IS SO ORDERED.**


cc: Counsel of Record